TEXTO COMPLETO DE LA SENTENCIA
El Pueblo de Puerto Rico (Pueblo) comparece ante nosotros para que revoquemos la resolución emitida, el 23 de junio de 2008, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). Mediante el dictamen aquí impugnado, el foro a quo determinó que la intervención del Estado con la señora Claribel A. Estrella Viñas (Sra. Estrella) no se hizo conforme a la ley y al derecho aplicable. En consecuencia, declaró ha lugar la supresión de evidencia, por lo que excluyó la prueba de aliento que se le realizó a la Sra. Estrella en un bloqueo de tránsito.
*1076 Con el beneficio de la transcripción de la vista de supresión de evidencia, procedemos a resolver la causa de epígrafe.
I
A las 12:20 de la madrugada del 10 de noviembre de 2008, la Policía de Puerto Rico (Policía) realizó un bloqueo en la Avenida Santa Juanita, Bayamón, Puerto Rico. Durante dicho procedimiento se intervino con el vehículo de la Sra. Estrella. Ante un alegado motivo fundado de que la Sra. Estrella conducía bajo los efectos de bebidas embriagantes, los oficiales a cargo del procedimiento le realizaron una prueba de aliento, la cual arrojó 0.124% de alcohol residual en la sangre.
Estos hechos dieron lugar a la presentación de denuncias por conducir un vehículo de motor sin estar autorizada en Ley y bajo los efectos de bebidas embriagantes, delitos menos graves tipificados en los Art. 3.23 y Art. 7.02 de la Ley Núm. 22 del 7 de enero de 2000, según enmendada, 9 L.P.R.A. see. 5073 y 5202, respectivamente, mejor conocida como la Ley de Vehículos y Tránsito de Puerto Rico.
Determinada la existencia de causa probable contra la Sra. Estrella y señalado el juicio para el 25 de febrero de 2008, la acusada presentó oportunamente moción bajo la Regla 95 de las de Procedimiento Criminal, 34 L.P. R.A. Ap. II, R. 95. Entre los documentos solicitados se encontraban los siguientes:

“53(d)- Diga, si el bloqueo del tránsito y/o de la carretera, fue anunciado públicamente. De ser la contestación en la afirmativa, conteste lo siguiente:

1) Exprese los medios utilizados para dar publicidad al bloqueo del tránsito y/o de la carretera.

2) Exprese los días específicos, medio de publicidad específico y la cantidad del tiempo en que fuera publicado.

3) Acompañe copia de las facturas y/o del costo de publicación, por cada uno de los medios de publicidad utilizados para publicar el bloqueo del tránsito y/o de la carretera ejecutada. De haberse publicado en los medios de publicidad, como un servicio público, someta evidencia de ello y toda la información requerida en el (2) anterior.

4) Diga el alcance de la publicidad del bloqueo del tránsito y/o de la carretera ejecutado. O sea, exprese el municipio o los municipios y lugares, en donde se haya realizado la publicación del referido bloqueo. ”
Ante el requerimiento de la acusada, el Ministerio Público le entregó copia de los documentos relacionados con el bloqueo de carretera del 10 de noviembre de 2008: el comunicado de prensa, solicitud de autorización de bloqueo, plan de trabajo, bitácora de intervención del bloque, entre otros.
Meses después de la entrega de los documentos, la Sra. Estrella le solicitó al TPI la supresión de la prueba de aliento que le fue administrada a la acusada. Los fundamentos esbozados en la solicitud son los siguientes:

“]) que entendemos que la prueba de alcohol realizada por la Agente Elizabeth Robles Monroig no es admisible en el presente procedimiento por no haber existido motivos fundados para la detención y posterior intervención con la acusada de epígrafe;

2) que el bloqueo del tránsito en la Avenida Santa Juanita en Bayamón no cumplió con todos y cada uno de los requisitos jurisprudenciales;

3) que en el presente caso, el Estado Libre Asociado, por conducto de Eiscalía, no cuenta con evidencia 
*1077
documental sobre la publicación o publicidad, en los medios de comunicación del comunicado de prensa de fecha 6 de noviembre de 2007;

4) que en el comunicado de prensa de por sí, no satisface el requisito jurisprudencial de publicación. Indica que se requería prueba específica y fehaciente por parte de la Policía de Puerto Rico, sobre la publicación de los medios de comunicación del referido comunicado de prensa;

5) que en supuesto de que se haya publicado el comunicado de prensa en los medios de comunicación, situación que se niega, la información contenida en el referido comunicado y la notificación en que se anuncia el bloqueo de tránsito, no es una notificación adecuada a la ciudadanía y no informa adecuadamente al pueblo sobre la ejecución de los bloqueos del tránsito en las carreteras, por parte de la Policía de Puerto Rico;

6) que por todo lo anterior, la Sra. Estrella entiende que el bloqueo de tránsito de la carretera es uno ilegal, que hace de la intervención una ilegal, sin motivos fundados y, por ende, hace de la prueba una ilegalmente obtenida e inadmisible en derecho."

Posteriormente, la Sra. Estrella se reiteró en su solicitud de supresión de evidencia. Sin embrago, no surge del expediente que el Pueblo se haya expresado por escrito.
Así las cosas, el TPI celebró vista evidenciaria. Luego de aquilatar la prueba presentada por el Ministerio Fiscal y los argumentos de las partes, dicho foro dictó resolución y declaró ha lugar la supresión de evidencia, por lo que suprimió la prueba de aliento.
Inconforme, el Pueblo impugnó ante este foro el dictamen de instancia bajo el siguiente fundamento:

“Abusó de su discreción el Tribunal de Primera Instancia al ordenar la supresión de la evidencia producto de un bloqueo por un alegado incumplimiento por el Ministerio Público con la Regla 95, habida cuenta que la información solicitada no estaba en manos del Estado; en la alternativa, la acusada no demostró la falta de divulgación del aviso público de la intervención.”

II
En primer lugar, debemos señalar que de los planteamientos de error surge que el Pueblo le imputó al TPI incidir respecto a la apreciación de la prueba oral. En lo que respecta a nuestra función revisora, es firme principio de hermenéutica que, de ordinario, no intervendremos con la apreciación de la prueba y la credibilidad adjudicada, ni con las determinaciones de hechos del foro sentenciador, salvo que éste haya incurrido en error manifiesto, pasión, prejuicio o parcialidad. Trinidad García v. Chade, 153 D.P.R. 280, 291 (2001). Tal principio está cimentado en que las decisiones del foro de Instancia están revestidas de una presunción de corrección y regularidad, de modo que merecerán nuestra deferencia. Pueblo v. Rivera Nazario, 141 D.P.R. 865, 874 (1996). Después de todo, es el foro juzgador el que está en mejor posición para evaluar la prueba desfilada, pues tiene la oportunidad de ver y observar a los testigos, y su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas y vacilaciones, e ir formando gradualmente en su conciencia la convicción de si dicen o no la verdad. Pueblo v. Viruet Camacho, res. el 14 de abril de 2008, 173 D.P.R. _ (2008), 2008 J.T.S. 80.
Ahora bien, si la apreciación que de la prueba hizo el foro juzgador se aleja de la realidad fáctica, o la prueba resulta inherentemente imposible o increíble, entonces podemos y debemos intervenir con la apreciación de la prueba y las determinaciones del Tribunal de Instancia. Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49, 63 (1991).
De un examen al recurso ante nuestra consideración nos percatamos que el Pueblo no demostró que el TPI *1078 incurrió en pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba presentada o en la adjudicación de credibilidad. Por lo tanto, en ausencia de los parámetros revisores no debemos intervenir con la adjudicación de credibilidad que realizó el hermano foro de instancia.
III
De otro modo, procede que expongamos los siguientes señalamientos pertinentes a la causa que atendemos. La creciente ola de accidentes automovilísticos producto de conductores bajo los efectos de bebidas embriagantes, trajo como consecuencia que nuestros legisladores aprobaran la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22 del 7 enero de 2000, según enmendada, 9 L.P.R.A. see. 5001, et seq. [1] Su creación y aprobación también respondió a la obligación del Estado en promover y velar por la seguridad pública en todas sus variantes, simplificar y agilizar las gestiones de los ciudadanos en su contacto diario con los organismos gubernamentales. Exposición de Motivos de la Ley de Vehículos y Tránsito de Puerto Rico, supra.
Esta importante legislación dispone lo siguiente:

“Constituye la posición oficial y política pública del Gobierno del Estado Libre Asociado de Puerto Rico, que el manejo de vehículos o vehículos de motor en las vías públicas bajo los efectos de bebidas embriagantes, drogas o sustancias controladas, constituye una amenaza de primer orden a la seguridad pública y que los recursos del Estado irán dirigidos a combatir en la forma más completa, decisiva y enérgica posible, con miras a la pronta y total erradicación de esta conducta antisocial y criminal que amenaza las vidas y propiedades de todos los ciudadanos, así como la tranquilidad y la paz. social.

A tenor con lo dispuesto, será ilegal que cualquier persona bajo los efectos de bebidas embriagantes, drogas o sustancias controladas, conduzca, haga funcionar cualquier vehículo o vehículo de motor, o posea cualquier envase abierto que contenga bebidas embriagantes en el área de pasajeros de cualquier vehículo o vehículo de motor.” Art. 7.01 de la Ley de Vehículos y Tránsito, supra, según enmendada, 9 L.P.R.A. see. 5201.
Esta ley declara lo que constituye manejar un vehículo o vehículo de motor bajo los efectos de bebidas embriagantes, a saber:

“En cualquier proceso criminal por infracción a las disposiciones de la see. 5201 de este título, el nivel o concentración de alcohol existente en la sangre del conductor al tiempo en que se cometiera la alegada infracción, según surge tal nivel o concentración del análisis químico o físico de su sangre o aliento o cualquier sustancia de su cuerpo, menos la orina, constituirá base para lo siguiente:

(a) Es ilegal per se, que cualquier persona mayor de dieciocho (18) años de edad conduzca o haga funcionar un vehículo de motor, cuando su contenido de alcohol en su sangre sea de ocho centésimas del uno por ciento (0.08%), o más, según surja tal nivel o concentración del análisis químico o físico de su sangre, o de su aliento.

(b)...

(c)...

(d)...”.

Art. 7.02 de la Ley de Vehículos y Tránsito, supra, según enmendada, 9 L.P.R.A. see. 5202.
A pesar de que el Estado tiene el deber de regular, controlar y limitar el uso de las vías públicas con el fin de mantener y promover la seguridad de los ciudadanos que en ellas transitan, dicha autoridad no es irrestricta. *1079 Como expondremos, su alcance está limitado y circunscrito a los contornos constitucionales.
Es conocido que la jurisprudencia validó la intervención del Estado con los vehículos de motor mediante el mecanismo de bloqueos. El propósito de dicha norma es permitir al Estado detectar la comisión de delitos relacionados con las leyes de tránsito, como lo es conducir bajo los efectos de bebidas embriagantes. No obstante, el Tribunal Supremo de Puerto Rico reguló dicho mecanismo y adoptó ciertos criterios de razonabilidad para su validez, tales como: 1) la magnitud del interés público que motiva la realización del bloqueo; 2) el grado conque éste adelante dicho interés; y 3) el alcance de la intrusión con la intimidad. Pueblo v. Yip Berrios, 142 D.P.R. 386, 411 (1997); Nieves v. AM Contractors, Inc., 166 D.P.R. 399, 419 (2005).
Esta regulación y exigencia es producto de la norma jurisprudencial de que, tanto bajo la Constitución de Estados Unidos como bajo la nuestra, una detención temporera de una persona que conduce un vehículo de motor constituye una detención de la persona. Por tal razón, se ha resuelto que a este tipo de situaciones les aplica la protección contra registros y allanamientos irrazonables consagrada en la sec. 10 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Sec. 10, Const. E.L.A., L.P.R.A., Tomo 1. [2] En otras palabras, toda intervención del Estado con una persona que conduce un vehículo de motor mediante el mecanismo del bloqueo tiene que pasar por el crisol constitucional. Pueblo v. Yip Berrios, supra.
En el caso antes mencionado, también se estableció que como parte del análisis de razonabilidad se debe examinar el objetivo principal que motivó la realización del bloqueo. Este análisis es esencial para determinar si el objetivo principal es suficiente para justificar el grado de intrusión a la intimidad individual que supone la detención del vehículo de motor. Al hacer este ejercicio, se deben examinar los aspectos tales como la localización del bloqueo, la hora y las prácticas de los agentes estatales durante su operación. Además, se han establecido otros criterios a evaluar con el fin de evitar la lesión a la intimidad, a saber:

“I) el alcance del bloqueo;

2) la duración de la detención;

3) el bloqueo tiene que ser claramente visible (el grado de iluminación en el lugar, la existencia de avisos a una distancia razonable que indiquen la actividad policial en la zona resultan importantes);

4) la operación del bloqueo debe garantizar la seguridad de los que por allí transiten;

5) la interferencia con el flujo normal del tránsito debe ser mínima o, en todo caso, razonable; y

6) deben existir patrones objetivos para las detenciones y así tratar de eliminar la arbitrariedad “profding” por parte de los agentes estatales. Por lo tanto, los oficiales supervisores deben crear guías, en las que se incluyan los siguientes aspectos: hora, duración del bloqueo, normas de seguridad, criterios de detención de vehículos y otros procedimientos inherentes a la operación del bloqueo que restrinjan el ejercicio de discreción por parte de los agentes en el campo.” Pueblo v. Yip Berrios, supra, a las págs. 411-413; Nieves v. AM Contractors, Inc., supra.
El cumplimiento con dichos criterios le confieren al bloqueo, aires de razonabilidad.
Por otro lado, nuestra jurisprudencia ha expresado que ante una impugnación judicial de este tipo de actuación gubernamental, por constituir una incautación sin una orden judicial previa, compete al Estado probar su razonabilidad. Pueblo v. Yip Berrios, supra, a la pág. 414. Dicha determinación responde a que, como es sabido, todo registro y allanamiento sin orden judicial se presume irrazonable y, por lo tanto, inválido. Consecuentemente, le corresponde al Ministerio Fiscal rebatir la presunción de invalidez mediante la *1080 demostración de la existencia de alguna de las circunstancias excepcionales que justifiquen actuar sin una orden judicial previa. E.L.A. v. Coca Cola Bott. Co., supra; Pueblo v. Camilo Meléndez, supra, a la pág. 572.
Es de señalar que la Policía reguló el mecanismo de los bloqueos de tránsito mediante la Orden General Número 90-4 del 27 de noviembre de 1990, titulada Normas y Procedimientos para Efectuar Campañas de Inspección de Vehículos y/o Cotejo de Documentos. En lo aquí pertinente, la sección IX(B)(2) de dicha orden dispone que: Aunque el horario y lugar exacto de las campañas o cotejos no se dará a conocer al público con anticipación, los mismos serán dados a conocer ampliamente a través de los medios noticiosos para realizar el efecto de disuasión deseado entre los conductores potenciales a ser intervenidos.
Por otro lado, cuando la intervención del Estado no cumple con las garantías constitucionales antes indicadas, el acusado puede solicitar ante el TPI la supresión de cualquier evidencia obtenida mediante dicho procedimiento, como, por ejemplo, la prueba de aliento. Este remedio está regulado por la Regla 234 de Procedimiento Criminal, según enmendada, 34 L.P.R.A. Ap. II, R. 234, y la misma reza como sigue:

"La persona agraviada por un allanamiento o registro ilegal podrá solicitar del tribunal al cual se refiere la Regla 233 la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro, o la devolución de la propiedad, por cualquiera de los siguientes fundamentos:

(a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.

(b) Que la orden de allanamiento o registro es insuficiente de su propia faz.

(c) Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allanamiento o registro.

(d) Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.

(e) Que la orden de allanamiento fue librada o cumplimentada ilegalmente.

(f) Que es insuficiente cualquier declaración jurada que sirvió de base a la expedición de la orden de allanamiento porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente.

En la moción de supresión de evidencia se deberán exponer los hechos precisos o las razones específicas que sostengan el fundamento o los fundamentos en que se basa la misma. El Tribunal oirá prueba sobre cualquier cuestión de hecho necesaria para la resolución de la solicitud y celebrará una vista evidenciaría ante un magistrado distinto al que atenderá el juicio, cuando se trate de evidencia incautada mediando una orden judicial y la parte promovente demuestre que existe una controversia sustancial de hechos que haga necesario la celebración de la vista; en ausencia de tal demostración, el tribunal podrá adjudicar la moción sin vista previa utilizando como base los escritos presentados por las partes.

El tribunal vendrá obligado a celebrar una vista evidenciaría con antelación al juicio, y ante un magistrado distinto al que atenderá el juicio, cuando se trate de evidencia incautada sin previa orden judicial si en la solicitud la parte promoverte aduce hechos o fundamentos que reflejan la ilegalidad o irrazonabilidad del registro, allanamiento o incautación. El Ministerio Público vendrá obligado a refutar la presunción de ilegalidad del registro o incautación y le corresponderá establecer los elementos que sustentan la excepción correspondiente al requisito de orden judicial previa.
*1081 Como señalamos, este mecanismo está disponible para hacer efectiva la protección constitucional contra registros y allanamientos ilegales o irrazonables, sec. 10 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, supra. Pueblo v. Blasé Vázquez, 148 D.P.R. 618, 627 (1999).
La jurisprudencia precisó que la norma de exclusión de evidencia establecida por la Regla 234 de Procedimiento Crimina, supra, persigue: 1) proveer un remedio efectivo a la víctima del registro y allanamiento irrazonable o ilegal; 2) evitar que el Gobierno se beneficie de sus propios actos ilegales; 3) preservar la integridad del tribunal, y 4) disuadir a los oficiales del orden público a que en el futuro no repitan las acciones objeto de la impugnación. Añaden las expresiones de nuestro más alto foro que con dicha regla se fomenta la economía procesal. Pueblo v. Blasé Vázquez, supra, a la pág. 628; Pueblo v. Hernández González, res. el 15 de enero de 2009, 175 D.P.R. _ (2009), 2009 J.T.S. 10.
En el presente caso, el Pueblo impugnó la decisión de Instancia de suprimir la prueba de aliento que se le realizó a la Sra. Estrella durante un bloqueo de tránsito. Adujo que fue improcedente suprimir dicha prueba por alegadamente incumplirse con la Regla 95 de Procedimiento Criminal, supra, sin tomar en cuenta que el documento que acreditaba la publicación del bloqueo no se encontraba en poder de fiscalía; o en la alternativa, porque la Sra. Estrella no demostró la falta de divulgación del comunicado de prensa sobre la realización del bloqueo de tránsito. No le asiste la razón.
Según precisamos en los hechos, la intervención con la Sra. Estrella fue producto de un bloqueo de tránsito. Como consecuencia a dicha intervención se le practicó la prueba de aliento, la cual arrojó 0.124% de alcohol residual en la sangre. Ante las denuncias en contra de la Sra. Estrella y la determinación de causa probable, ésta solicitó la supresión de la prueba de aliento por no haberse cumplido con todos los requisitos jurisprudenciales para la validez del bloqueo, en específico, con su publicación en los medios de comunicación. Por consiguiente, adujo que la intervención fue ilegal. Ante dichos señalamientos y la oposición del Ministerio Fiscal, el TPI celebró una vista a esos efectos. La prueba del Ministerio Fiscal se circunscribió en el testimonio de la Agente Elizabeth Robles y ésta declaró lo siguiente:
EXAMEN DIRECTO DE LA AGENTE ELIZABETH ROBLES:

“P. Bien ¿ Y específicamente en relación a este bloqueo, qué gestiones se hicieron que a usted le conste en términos de la publicidad que se iba a dar a esta... a este bloqueo?

R. Bueno, el Cuartel General es quien emite un comunicado de prensa que me consta que sí se emitió porque se envía copia al Cuartel de Tránsito que se entrega para Regla 95 y yo misma fui quien se la entregué a la Agente Erazo. El Cuartel General envía esa comunicación a un listado que ellos tienen de comunicaciones. Ellos envían eso por fax. Eso es lo que me consta de propio conocimiento. ”

CONTRAINTERROGATORIO A LA AGENTE ELIZABETH ROBLES:

“P. Le pregunto, ¿fuera de la documentación que usted le entregó al licen. ..ala Agente Erazo de Fiscalía, no existe otra documentación adicional para este bloqueo?

R. Los documentos que la Regla 95 es cuestión de bloqueo. La autorización, el comunicado de prensa, el resultado.

P. ¿O sea, que todo lo que usted, le entregó es todo lo que tiene que ver con el bloqueo?

R. Exacto.

*1082
P. Okay. Le pregunto, ¿si es un hecho cierto que sí existe un comunicado de prensa que se emitió para ese bloqueo en específico en esos días de ese bloqueo?

R. El comunicado que se le envía a los medios noticiosos.

P. Okay. ¿Es un hecho cierto que no existe ninguna evidencia o ningún documento que usted pueda palpar que pautan, qué medios, cómo se publicó?

R. No, eso no tenemos evidencia. ”

RE-DIRECTO A LA AGENTE ELIZABETH ROBLES:

“Juez

P. Agente, eso no es lo que se le está preguntando. Se le está preguntando si usted como Agente de ese bloqueo ese día... esa noche o ese día, a usted le dieron unas instrucciones o a usted le dan evidencia del comunicado que se envía a los medios, eso es lo que se le está preguntando.

R. Sí, el comunicado sí yo lo vi. El que se envía a los medios.

Fiscal

P. Le pregunto, ¿si aparte de ese comunicado, tiene usted algún recorte de periódico o alguna otra constancia de ese comunicado ?

R.No.

P. ¿Es usual que lo tenga?

R. Pues, no... las instrucciones son qué lo que guardemos si los tenemos. Pero, por lo menos, de este bloqueo yo no tengo ninguna evidencia de... de éste.

P. Le pregunto, ¿a usted se le requiere que busque los periódicos de ese día para tenerlos?

R. Sí, Calidad ahora no los está exigiendo. ”

Como podemos observar, la prueba presentada por el Ministerio Fiscal fue una escueta y débil. El testimonio de la agente no fue suficiente para demostrar que el bloqueo de tránsito cumplió con todos los requisitos establecidos por nuestro estado de derecho para su validez. En específico, el Ministerio Fiscal no evidenció que el comunicado de prensa fue publicado en algún medio de comunicación, conforme lo exige la Orden General Núm. 90-4 de la Policía (Normas y Procedimientos para Efectuar Campañas de Inspección de Vehículos y/o Cotejo).
Ante la impugnación de ilegalidad del bloqueo y la consecuente irrazonabilidad de la intervención con la Sra. Estrella, le correspondía al Estado probar su razonabilidad y el cumplimiento con los criterios jurisprudenciales y reglamentarios de la Policía.
Recordemos que los bloqueos constituyen incautaciones sin orden judicial previa, por lo que se presumen irrazonables e inválidos. Como indicamos, bajo estos escenarios, nuestro estado de derecho le impone al Ministerio Fiscal el peso de la prueba. Por lo tanto, éstos tienen que rebatir la presunción de invalidez. Sin *1083 embargo, en el presente caso, el Ministerio Fiscal no ejecutó con éxito su encomienda.
Como vimos, la prueba del Pueblo se centró en demostrar la existencia del comunicado de prensa, situación que aquí no estaba en controversia. Sin embargo, no se demostró que dicho comunicado fue publicado o transmitido en algún medio de comunicación, según lo requiere la propia Orden General Núm. 90-4 de la Policía.
Cabe señalar que la existencia del comunicado de prensa no garantiza ni demuestra que éste haya sido enviado a los medios de comunicación ni mucho menos que se haya transmitido.
Ante la inexistencia de dicha prueba, el Estado no demostró que los ciudadanos de Puerto Rico fueron notificados de la intervención vehicular (bloqueo) que la Policía efectuó, el 10 de noviembre de 2008, en las zonas de Mayagüez, Bayamón, Estación ‘C’ Patrullas de Carreteras, Aguadilla, Utuado, Ponce, Fajardo, San Juan y Carolina.
De lo anterior, vemos que no son correctas las alegaciones del Pueblo en cuanto a que la supresión de evidencia se debió a un incumplimiento con la Regla 95 de Procedimiento Criminal, 34 L.P.R.A. Ap. Ill, R. 95; ni que era a la Sra. Estrella a la que le correspondía demostrar la falta de divulgación del comunicado de prensa.
No entendemos la razón por la cual el Pueblo adujo que la supresión fue una sanción por no haberse descubierto el documento acreditativo de la publicación. A pesar de que la resolución impugnada es una escueta, del texto de ella no se desprende lo insinuado y argüido por el Pueblo. Subrayamos que ni el lenguaje utilizado por el TPI en su dictamen, ni las expresiones de dicho foro durante la vista de supresión de evidencia, permite concluir que ese fue el fundamento para su proceder. Todo lo contrario, podemos razonablemente inferir que el fundamento cardinal del TPI fue el incumplimiento con la norma de derecho aplicable a los bloqueos. Resolver lo contrario malinterpretaría y alteraría la decisión de instancia. El Pueblo no tiene razón en este planteamiento.
Por otro lado, resulta innecesario que nos volvamos a expresar en cuanto a quién le corresponde el peso de la prueba en casos como el de autos, ya que hemos expresado en innumerables ocasiones que es al Estado al que le corresponde probar la validez de la intervención. Por consiguiente, tampoco le asiste la razón al Pueblo en cuanto a este segundo señalamiento.
Conforme a todo lo antes expuesto, resulta ineludible concluir que el TPI no erró ni abusó de su discreción al suprimir la pmeba de alcohol que se le realizó a la Sra. Estrella en el bloqueo del 10 de noviembre de 2007. Ante el incumplimiento con todos los requisitos para la validez del bloqueo, éste fue uno inválido y la intervención irrazonable.
IV
Por los fundamentos que preceden, expedimos el auto de certiorari y confirmamos el dictamen del Tribunal de Primera Instancia.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Leda. María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 57

1. Las estadísticas del 6 de febrero de 2009 de la División de Tránsito de la Policía de Puerto Rico muestran las cifras de *1084 muertes de tránsito para las siguientes fechas:
2009 - 41 (hasta 6 de febrero de 2009)
2008 - 399
2007 - 452
2006 - 508
2005-457
2004-498
2003 - 495
Total 2,850

2. “No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.

No se interceptará la comunicación telefónica.

Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.

Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.’’ Sec. 10 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, supra.
Se ha precisado que esta garantía constitucional persigue tres objetivos: I) proteger la intimidad y la dignidad de los seres humanos; 2) amparar sus documentos y otras pertenencias; y 3) interponer la figura del juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión estatal. Pueblo v. Loubriel, Suazo, 158 D.P.R. 371 (2003); Pueblo v. Cruz Calderón, 156 D.P.R. 61 (2002); Pueblo v. Camilo Meléndez, 148 D.P.R. 539 (1999); E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197, 207 (1984).